```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

RALPH CHELLEL,
                                                Civil Action No.
                        Petitioner,             CV-04-1285 (DGT)

        - against -                             ORDER

DAVID MILLER, Superintendent, Eastern
New York Correctional Facility,

                        Respondent.
------------------------------------------------------------x
```

TRAGER, J.

Petitioner was convicted of three counts of robbery in the first degree in New York State Supreme Court, Kings County. Petitioner files this pro se petition for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (2000), to vacate his judgment of conviction. For the following reasons, his petition is denied.

**Background**

**(1)**

Petitioner was tried at a jury trial for two robberies in October and November 1999. The evidence presented at trial supports the following statement of facts.

On the morning of October 21, 1999, petitioner, his co-defendant, Yamani Ravenell, and another accomplice, who was never arrested or identified, robbed the cashier, Blas Taveras, at a bodega in the Bedford-Stuyvesant neighborhood of Brooklyn, New

York.  Petitioner aimed a pistol at Taveras and asked him to render all the money in the bodega to him.  Petitioner, Ravenell and their accomplice took the money from the cash register, several packs of cigarettes and an envelope containing more than $700 for rent.  None of the robbers wore masks, and Taveras had an unobstructed view of petitioner's face.

About one month later, on the evening of November 26, 1999, a surveillance camera recorded two men wearing masks and hoods robbing a bodega four blocks north of the one that petitioner robbed on October 21.  The robbers ordered the cashier, Carlos Tejada, to empty the cash register and give them the money.  When Tejada could not open it, the robbers escaped with the unopened register, cash that was hidden in a refrigerator under the cash register and money they took from Tejada and from the owner of the bodega, Nelson Cuevas.  Police officers arrived at the bodega in time to witness the robbers running to a Chevrolet Monte Carlo parked around the corner from the bodega.  Before the robbers could drive away, they were blocked by a police car.  The robbers quickly exited the car and ran away from the police, who chased them down the block and arrested one of them in the yard of a house down the street from where the car was parked.  The robber the police apprehended was dressed in a black sweatshirt with a hood. He was later identified as petitioner.  The police also found a handkerchief near petitioner and a yellow sweatshirt in a

yard nearby. The driver of the Monte Carlo was also arrested and identified as Ravenell. The other robber escaped. The cash register from the bodega was found in the back seat of the car.

Ravenell and petitioner were brought back to the bodega in custody. There, the police asked Tejada and Cuevas if they recognized either of them. Neither Tejada nor Cuevas recognized Ravenell, but they both identified petitioner by his build and attire. They did not recognize his face because he had worn a mask during the robbery.

The next day, the police placed petitioner in a lineup with four "fillers." Because petitioner was the only man in the lineup to wear braids, the police had all the participants wear hats. Petitioner chose his hat and identification number. He chose the only red hat. The police then escorted Taveras into the viewing area, and he quickly identified petitioner as one of the men who robbed the bodega on October 21, 1999.

(2)

At a pretrial hearing, petitioner claimed that the lineup at which Taveras identified him was suggestive because there were only five participants, instead of six, and, of the five lineup participants, he had the lightest skin, was the youngest, and was the only one to wear braids. The hearing court declined to exclude the identification evidence, holding that the

3

identification was not suggestive.  In particular, the court found that the police avoided suggestion by using fillers who were similar to petitioner and by taking adequate measures, like hiding any distinctive hair styles under hats, to moderate the differences between petitioner and the fillers.  Joint Mapp/Wade/Dunaway Hr'g Tr. 561-62.  The court also refused to exclude evidence that the witnesses to the robbery on November 26 recognized petitioner by his clothing, build, and hair.  The court held that such testimony did not amount to an identification and, thus, the State need not give notice of its intention to elicit it under section 710.30 of New York State Criminal Procedure Law.  See N.Y. Crim. Proc. Law § 710.30 (requiring notice to be given when the State intends to offer testimony at trial regarding the observation of a defendant at the crime scene by a witness who has identified him before trial).

Petitioner was charged with the robberies of Taveras on October 21, and of Cuevas and Tejada on November 26.  At trial, Taveras testified in the State's case-in-chief.  After testifying about the illumination of the store at the time of the October 21 robbery, he identified petitioner.  Taveras also testified about the lineup at which he identified petitioner.  The State offered into evidence a photograph of the lineup which included petitioner and all four fillers.

Cuevas and Tejada testified about the November 26 robbery. Cuevas testified that, when the police asked him to identify petitioner, he could not identify petitioner's face but said his clothing and build were similar to those of the man who robbed his store. Trial Tr. 181-82. Similarly, Tejada testified that he recognized petitioner by his clothing and build. Id. at 261:113-23.

The State offered the surveillance videotape from the November 26 robbery into evidence. The videotape showed Ravenell entering the store, buying a soda and leaving. A few minutes later, after the last customer had left the bodega, two masked men, one dressed in a yellow, hooded sweatshirt, the other dressed completely in black, entered. In the videotape, the black sweatshirt worn by one of the robbers had a large logo on the chest. Although petitioner was arrested wearing a black sweatshirt, like the robber in the videotape, his sweatshirt bore no logo. However, it was possible to see on the videotape that petitioner wore another black sweatshirt under the one with the logo.

In its summation, the State claimed that petitioner's arresting officer was honest when he testified at trial. Id. at 1353:14-15. The court sustained a defense objection and struck that portion of the summation from the record. The State again addressed the credibility of the arresting officer, saying: "He

5

told the truth." Id. at 1371:12.  The defense objected on the basis of improper bolstering of witness credibility, which the court overruled.  Regarding Taveras's testimony, the State offered this assessment: "He is exactly the type of guy you are going to believe.  I have no motive to [lie]."  Id. at 1377:15-16.  This time, the defense failed to object.

Petitioner was convicted of three counts of robbery in the first degree and sentenced to three concurrent sentences of eighteen years imprisonment.  He appealed, raising two issues through counsel and two issues pro se, which he raised in a supplemental brief.  The initial brief raised the following issues: 1) the lineup on November 27, 1999, was unduly suggestive and 2) the trial court violated petitioner's right to due process when it allowed identification testimony without the notice required by section 710.30 of New York State Criminal Procedure Law.  The supplemental brief raised the following issues: 1) the evidence presented at trial was insufficient to support conviction and 2) the State's summation violated petitioner's right to due process.

On August 11, 2003, the Appellate Division, Second Department, affirmed the court.  People v. Chellel, 762 N.Y.S.2d 922, 307 A.D.2d 974 (2d Dep't 2003).  First, the court addressed the lineup, recognizing that there is no requirement "that a defendant in a lineup be surrounded by individuals nearly

identical in appearance." Id. Next, the court disposed of petitioner's argument regarding the State's summation as unpreserved for appeal. Id. Furthermore, the court held that, even were the issue preserved, the State did not improperly vouch for its witnesses but merely commented on the evidence and responded to the defense's summation. Id. at 922-23. The court then found that the evidence was legally sufficient to establish petitioner's guilt beyond a reasonable doubt. Id. at 923. Finally, the court held: "The defendant's remaining contentions, including those raised in his supplemental pro se brief, are without merit." Id. The court did not discuss petitioner's claim regarding the State's violation of section 710.30. The Court of Appeals denied petitioner's petition for leave to appeal on December 12, 2003. People v. Chellel, 1 N.Y.3d 569, 807 N.E.2d 899, 775 N.Y.S.2d 786 (2003).

By petition dated March 18, 2004, petitioner sought a writ of habeas corpus under Section 2254 of Title 28 of the United States Code on the same two grounds he brought up on appeal in his initial appellate brief, namely: 1) the trial court's refusal to preclude identification evidence of which petitioner had no notice and 2) the trial court's refusal to suppress testimony about the November 27, 1999, lineup both violated the petitioner's due process rights.

Addressing the first ground regarding pretrial notice, the

State argued that petitioner's claim 1) does not present a federal constitutional issue; 2) if it did, the claim is unexhausted; and 3) were the claim exhausted and presented a federal constitutional issue, it would have no merit. Mem. of Law in Opp'n to Pet. for Writ of Habeas Corpus ("Mem. in Opp'n") 9-16. The second ground, according to the state, fails because the lineup was not unduly suggestive. Id. at 1.

**Discussion**

**(1)**

**Standard of Review**

Under AEDPA, federal courts apply a deferential standard of review when reviewing a habeas corpus petition by a prisoner challenging a state court conviction that was adjudicated on the merits. 28 U.S.C. § 2254(d). When a petitioner's claim has been adjudicated on the merits in state court, habeas relief will be available only if the petitioner can show that the state court decision: 1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or 2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is one that "(1) disposes of the claim on the merits, and (2) reduces its disposition to

judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotation marks omitted). The Second Circuit gives a "broad reading" to state court adjudications. Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002). Thus, the adjudication requirement is satisfied when the state court states: "Defendant's remaining contentions are without merit." See id.

A state court adjudication is "contrary to" clearly established federal law either if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the claim differently than the Supreme Court has on a case with materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's decision involved an "unreasonable application" of federal law if it "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. The Court stressed that the state court must have applied the law "unreasonabl[y]," not merely "erroneously or incorrectly." Id. at 411.

Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

9

**Admission of Identification Testimony without Notice in Violation of Section 710.30 of New York State Criminal Procedure Law**

In Ground One, petitioner claims that his due process rights were violated when the trial court allowed the State to introduce testimony that included what petitioner characterizes as a prior identification without notice.

A.  Exhaustion

Section 2254 requires petitioners to exhaust available state remedies before seeking federal habeas relief. 28 U.S.C. § 2254. According to the State, petitioner has not exhausted his claim attacking the admission of identification testimony without notice because he failed to raise it on appeal to the Appellate Division.

A petitioner must present the substance of a habeas corpus claim to the state court, including its federal constitutional dimension, before a federal habeas court can consider it. See Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner fairly presented a federal claim, if he asserted "the claim in terms so particular as to call to mind a specific right protected by the Constitution." Daye v. Attorney General of N.Y., 696 F.2d 186, 194 (2d Cir. 1982)(en banc). In Daye, the Court of Appeals for the Second Circuit outlined the ways in which a petitioner fairly presents "the constitutional nature of his claim." Id. These

include: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

Although the Appellate Division did not address petitioner's claim under section 710.30, petitioner raised the issue in his brief. Petitioner cited the Fourteenth Amendment to the United States Constitution, along with the New York Constitution and section 710.30 to support the following sentence: "Accordingly, this Court should reverse appellant's convictions for robbing Cuevas and Tejada and order a new trial at which the People will be precluded from adducing any identification testimony by these witnesses." Br. for Def.-Appellant 20.[1] This fails to "call to mind a specific right protected by the Constitution." Daye, 696 F.2d at 194. The balance of petitioner's argument on appeal was uniformly focused on whether the witnesses to the November 26,

---

[1] The heading introducing petitioner's second ground for appeal read:

> The Hearing Court Violated Appellant's Due Process Right to a Fair Trial When, Despite the People's Failure to Provide Identification Notice as Required by C.P.L. § 710.30, It Refused to Preclude Identification Evidence. Id.

1999, robbery identified petitioner or merely related his resemblance to the robber in his build and attire. This argument implicates section 710.30, not the Constitution. Finding that the testimony contained a prior identification, rather than a statement about petitioner's resemblance to the robber, would not have made notice constitutionally mandated. Thus, petitioner did not present the substance of his federal claim to the Appellate Division, and his claim remains unexhausted.

However, notwithstanding petitioner's failure to exhaust his claim, it may still be denied on the merits pursuant to AEDPA. 28 U.S.C. § 2254(b)(2).

B.  Federal Constitutional Question

According to § 2254, a federal habeas court may only consider a petition if it claims a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The requirement to give notice of testimony that includes a prior identification comes from section 710.30, a state discovery rule. Thus, the claim is not cognizable under § 2254 unless the failure to provide notice amounts to a violation of petitioner's due process rights. See Lisenba v. California, 314 U.S. 219, 236 (1941) (holding that state courts are bound by federal guarantees of due process "to observe that fundamental fairness essential to the very concept of justice"). Indeed, "a federal habeas court

does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002). Since the right to due process does not include pretrial notice of the prosecution's intention to offer identification testimony, see Brown v. Harris, 666 F.2d 782, 785 (2d Cir. 1981), the issue is "outside the orbit of federal judicial cognizance." United States ex rel. Kassim v. Wilkins, 298 F.2d 479,480 (2d Cir. 1962). Thus, the trial court's ruling remains a matter of state law not cognizable on habeas review.

### (3)

### The Lineup

Petitioner also challenges the admission of his identification in a lineup that he claims was assembled to highlight his differences from the fillers. The propriety of a lineup identification is a mixed issue of law and fact. See Sumner v. Mata, 455 U.S. 591, 597 (1982)("[T]he ultimate question as to the constitutionality of [the conduct of a photographic lineup] is a mixed question of law and fact"]). Therefore, a writ of habeas corpus will not issue unless the trial court's decision to admit the identification evidence involved an "unreasonable application" of federal law; this means that the court "identifie[d] the correct governing legal principle from

13

[the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.

Ordinarily, testimony that establishes that a defendant was previously identified in a lineup by a witness to a crime is admissible.  However, because of the exceeding credit juries give to such testimony, it must be excluded if, when viewed in light of the totality of circumstances, the lineup "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law."  Stovall v. Denno, 388 U.S. 293, 301-302 (1967), overruled on other grounds by, Griffith v. Kentucky, 479 U.S. 314, 328 (1987).

"A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." Raheem v. Kelly, 257 F.3d 122, 134 (2d Cir. 2001).  Therefore, it was unnecessarily suggestive to make a defendant in a rape case wear a green shirt when none of the fillers wore green, the victim was unable to see the defendant's face during the assault, and the description of the rapist the victim gave to the police was limited to his dark pants, dark shoes and green shirt. United States ex rel. Cannon v. Smith, 527 F.2d 702, 704 (2d Cir. 1975).

However, although lineups are not to be assembled so as to

14

spotlight the accused, "there is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." United States v. Reid, 517 F.2d 953, 966 n. 15 (2d Cir. 1975).  For example, it was not unnecessarily suggestive to place a twenty-two-year-old, light-skinned, six-feet tall, 200 pound, hispanic suspect in a lineup in which one of the four fillers was thirty-four and one thirty-five, three had lighter skin, one was five feet four inches, another five feet two inches, one weighed 152 pounds and another 154 pounds.  Roldan v. Artuz, 78 F. Supp. 2d 260, 264, 275 (S.D.N.Y. 2000).

In this case, a photograph of the lineup shows nothing unnecessarily suggesting that Taveras should choose petitioner. The lineup participants appear to be similar in age and complexion.  The police also attempted to neutralize differences in the participants' hair by having the lineup participants wear hats.  Although petitioner was the only one in the lineup wearing a red hat, it was he who chose it.  Even if the police chose the hat for petitioner, wearing it would not suggest that he was highlighted by the police as the accused.  When viewed in light of the totality of circumstances, it was not unreasonable for the trial court to conclude that the lineup procedure was proper. Thus, this ground for habeas relief is rejected.

**Conclusion**

Petitioner has shown no basis for relief under § 2254, and, therefore, his petition is denied. The Clerk of the Court is directed to enter judgment accordingly and close the case.

In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); Lucidore v. N.Y. Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).


Dated:   Brooklyn, New York
         August 21, 2008

                                        SO ORDERED:


                                        _____/s/_____
                                        David G. Trager
                                        United States District Judge

16